May it please the Court, Gerson's Assignment 4, Kevin Lewis, the Petitioner. In this case, Your Honor, I would first like to call the Court's attention to the dissent of Chief Justice Berger in the Ferretta case. In his dissent, he stated that he was opposed to a rule that would permit a defendant to represent himself for two reasons. One, he believed that it would permit the prosecution to obtain an easy conviction. And number two, he didn't think that the criminal justice system should be used as an instrument for self-destruction. Now, in this particular case... Yeah, but I've seen a lot of pro-pers outlaw your prosecutors. I've seen that happen. Not often. Well, depends on who the judge is. Yes, Your Honor. Well, you know, Justice Berger, Chief Justice Berger may have been correct, but Ferretta is still with us. Yes, Your Honor. But I should say this, that one defendant that sticks in my mind, his name was William Shakespeare. Yes, I heard of him. Yeah. I was the Excuse me. I was alluding to the dissent in order to bring up a point, and that is, the Chief Justice's concern, concerns were borne out in this particular case, and not solely because the Petitioner was pitted against an experienced prosecutor in this case, and not solely because the trial court denied the Petitioner his request for a continuance. What occurred in this case is that the defendant, the Petitioner, was denied his right to prepare a defense solely because, mainly because, during the course of the trial, he was not permitted access to a law library. During the – now, although the judge, the trial judge granted the defendant pro-pers status, the – it appears that the jail officials ignored this order. As a result, during the entire trial, he was detained at a facility which did not have a law library, and that, of course, curtailed his ability to defend himself. I would like to give the Court an example of how Mr. Lewis was handicapped in his ability to defend himself. First, a little background information. Prior to the beginning of the trial, the Court held some preliminary matters. One of them included granting the defendant, Mr. Lewis, the right to gain pro-pers status. Then the Court left the bench to handle some other matters, and then he returned to this particular case. And the first thing he said was, I understand there is a motion to bifurcate. And then he stopped at that point when somebody, the defense lawyer, then defense lawyer, interrupted him and asked a question. Okay. Are you familiar with the Supreme Court decision in Cain v. Garcia? Yes, Your Honor. Well, why doesn't that control here? Well, that case I submit is a very narrow decision, and it dealt with a defendant who asked that he be allowed access to a library before the trial started, pre-trial access to a library. During the actual trial itself, he was granted four hours' library time. So that particular decision would seem not applicable to this case. The High Court said in that case, a very narrow decision, said Ferretta does not obligate the Court to provide library access to a defendant, but they could only have been referring to his pre-trial library access. So then the Court, it was a very short decision. It's hard to understand because the Court ignored all the other cases dealing with the defendant's right to prepare a defense. And how else is the defendant going to prepare a defense if he does not allow access to a library? As Judge Hugg said in the Milton case, he said Ferretta is meaningless unless a defendant has the right to... But the Supreme Court seems to say that's not so. Excuse me, Your Honor? The Supreme Court seems to say that that isn't so, that you have to have access to the library. Well, I'm just interpreting the Supreme Court decision based on those particular facts. That's what we thought, too. That particular case. But the Supreme Court ignored all the other cases, bounds. It ignored Lewis, which dealt with the defendant's right to prepare a defense and to be able to use the tools, the legal tools necessary to implement his defense. And how else can a defendant defend himself unless he has a right to do some research in a law library? And I think I submit that that was his handicap in that respect was borne out in this particular case. After the Court returned, the trial judge returned to the Ensign case, the first thing he says, I understand that there is a motion to bifurcate. And that at that point, somebody else interrupted him, and then they didn't continue in that vein. Also, now then, after we go to the trial itself, shortly after the trial started, the prosecutor made a motion to introduce in evidence an exhibit. This exhibit contained a record of the defendant's prior strike convictions, two burglary convictions. Now, this was, this is a he knew that if the jury learned about his prior burglary convictions, it wouldn't help him in this particular case. So he objected. But the trial court overruled the objection. Now we advance to the end of the trial. The defendant is convicted. And then after that, for the first time, he's transferred to the pro per module, where he is now has access to a law library. So he starts to do some research. And he learns for the first time what it means to bifurcate a trial. So he prepares a motion for a new trial. And in doing so, one of the to bifurcate the trial. So then there was a hearing on the matter. And the court denied the motion and stated, you did not make a pretrial motion to bifurcate. That, Your Honors, is an example of how the defendant was handicapped in his ability to prepare a defense. Well, then, was there any, is there any question here that the trial court in California advised him, as Feretta requires, of all of, that there are a lot of pitfalls for people who decide to represent themselves? Yes, Your Honor. He thoroughly, the judge thoroughly went over that part of the Feretta rule. But if I may say, the defendant, I submit, had a good reason for wanting to fire his defense lawyer and represent himself. Now, the Court perceived that the reason why he made this untimely Feretta request was the, was to, was for the purpose of delaying the trial. But if you look at the record, that exactly is not the case. For example, as I just mentioned, the defendant was not aware that you could bifurcate the case, the trial. Now, if he had sufficiently discussed the case with his attorney, the defendant would have been informed that that was on the table, a pretrial motion to bifurcate. I want to ask one question in clarification. Do I understand he did not have standby counsel either? No, Your Honor. Although the Court could have pointed one under the McCaskill case, the Court could have pointed a standby counsel, but he didn't in this case. Are you sure about that? Yes, Your Honor. He didn't have standby counsel? Yes, Your Honor. I'm positive. He didn't have standby counsel. And in other aspects of the case, he did not have standby counsel. But you aren't arguing here that he should have been appointed standby counsel? No. I'm just saying my main point is that he was denied the right to prepare a defense during the trial, and then I was demonstrating how handicapped he was, and then thereafter, when he gained some access to a library, he was able to strengthen his defense. Okay. Your time has expired. We'll give you 30 seconds on rebuttal if you feel you want to say something. Thank you, Your Honor. Yes, Your Honor. May it please the Court, Robert S. Henry, Deputy Attorney General, for Respondent. We do believe that Kaine completely disposes of the Milton v. Morris library access issue. That decision was as broad as it can be. The ruling was simply that the letter did not recognize any right to library access. Well, that's not quite true. It said there wasn't. That's not quite true. It said that there wasn't any clearly established right. Yes, Your Honor. I misspoke. I misphrased it. What I meant was that under APA, and that was the context in which Kaine was decided, they basically said that's an interesting issue. We might visit it one day. However, at the present time, you know, this is not under APA a clearly established right. So, and it made no distinction between pretrial and post-trial issues. There's a question of whether the certificate of appeal. Let me ask you this. You know, I'm looking at this Bounds v. Smith where it says under head note 11 and 12, we hold, therefore, that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. That's the Supreme Court of the age of 76. I would have ruled exactly the same way in Bounds v. Smith and Lewis v. Case if I were on that bench because those were civil class actions having to do with post-convicted prisoners who were in prison. What's the difference? Because the difference is that this person is a jail inmate pretrial awaiting trial in a question wherein we have a certain, we have certain things such as, such as timeliness in terms of going to trial and whether he should get access. And I may very well rule the same way as the Candon v. Aspecia Court talked about on another day. It says the fundamental constitutional right of access requires authorities to assist inmates, et cetera, by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. Now, was adequate assistance provided to this gentleman from persons trained in the law? Oh, well, Your Honor. Was it? Was it? Well, Your Honor, he never, that's not his issue. His issue was... That's my issue. ...that he was not, he was not placed in a place wherein he had adequate access to libraries. That's his issue now. But at trial, he never mentioned anything about library until after the trial was basically over and he was about to argue before the jury. And obviously, no library access is enforced on a prisoner. But we go back to the fact that Kane itself said this has not been settled. I cannot overrule the U.S. Supreme Court and say, no, no, no, you did settle it. You settled it in bounds, which is a civil case having to do with the Civil Class Act. Are there any cases? This is, we got reversed in Kane because we obviously thought that this was pretty established, that you had to have some access if you were representing yourself. You didn't give that up when you gave up your right to counsel. But the Supreme Court looked at it otherwise. Are there any cases coming up on direct review, not on collateral habeas review, that would indicate that since, in the past few years, that would indicate that there is a right to some assistance? Your Honor, I don't know, but I would imagine there would be. I would, too. And I would imagine that the U.S. Supreme Court is saying, under the proper case, we may grant this right, but we're still stuck with AIPA. And under AIPA, it has not been clearly established. Now, Judge Prager makes a good point. Maybe if you could look at Bounds v. Smith. Yes. When was this case tried in State court? Your Honor, I would say, Your Honor, this case was tried in 2002. No, no, I'm sorry, 1999, earlier. Now, there's a question of whether the certificate of appealability issue covers this whole section. The fluid, what I call the United States v. fluid issue, and that was whether or not the trial court unconstitutionally imposed upon him the mandatory choice of either going to trial that day without counsel or basically continuing with his counsel. We think that whether or not that is true, since the certificate of appealability talked about the Sixth Amendment right, it is certainly true that the certificate of appealability did not cover the question that he raised in his AOB, and that went to the voluntariness of his choice. And even if it did, that issue was not exhausted. Now, I would like to respond to what he said in his opening argument. I seem to think that the questions he raises about the little example he gave about where the defendant did not seem to be aware that he should have made a pretrial motion to bifurcate, that, of course, goes to the quality of his own representation, which he cannot obviously raise at this point. And when he says about the delay, he's challenging the assumption that the defendant raised this at the last issue of delay. That, again, of course, is a state factual finding, and this Court has to find that that factional finding was an unreasonable determination in light of the record presented. Fluid, he argues that we should not follow Fluid. We should instead follow an Ace Circuit case, which, with all due deference to our visiting judge here, again, this is a situation where it may be unfair, but the prosecution has it on these APA cases. We have it either way. If the state court rules and relies on an Ace Circuit opinion, and the U.S. Supreme Court has not issued a decision contrary to that Ace Circuit opinion, then automatically we fall within APA's grant of the correctness of that decision by saying that we can rely as persuasive on Ace Circuit authority. However, like Milton v. Morris, we found out if that Ace Circuit decision goes against the state, and there's no clearly established U.S. Supreme Court decision on the matter, then we win in that case as well. Well, Your Honor, unless there's any further questions. Thank you, counsel. There is one. What is the practice now with law libraries in prisons in California? In prisons in California, Your Honor, I think that pretty much since that was a civil class action, and I think that we're pretty much under the thumb of the Federal courts in terms of providing adequate access. If you do not provide adequate law access, and these are post-convicted people, as I said before, that we're pretty much in trouble. So are law libraries provided now? In prisons? Yes. Oh, without doubt. In prisons. In prisons. In prisons. And in county jail, they have what they call the pro per tanks. Yes. And how about paralegals? I'm not sure, Your Honor. I'm totally out of my element there. I'm not sure. I don't think so. I know there's some States in the Ninth Circuit that do not provide law libraries for prisoners. They provide paralegals paid for by the State. That might be an adequate substitute. Yes. Any further questions? Thank you, Your Honor. Mr. Simon, do you wish to add anything very briefly? Just briefly, Your Honor. Counsel for the State mentioned that my client did not complain about being denied access to the law library at the county jail. I noted on page 9, footnote 5, a whole string of complaints that he made throughout the trial. And just to conclude that, Fluitt, I submit that the trial judge in this particular case should have held a hearing pursuant to Fluitt and the case upon which Fluitt is relied on in Fritz's case, and should have held a hearing to determine whether or not the defendant, Mr. Lewis, actually asked to represent himself on the day of trial solely for the purpose of delay. And he didn't hold his hearing. He just assumed they did. And with that, Your Honor, thank you. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case for today.
judges: Schroeder, Bright , Pregerson